| | |
|---|---|
| Denver District Court, City and County of Denver, State of Colorado<br>Court Address: 1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Telephone: 720/865-8301 | DATE FILED: September 27, 2017 11:52 PM<br>FILING ID: E18645BAA1EED<br>CASE NUMBER: 2017CV33616 |
| NATALIE CARRADO, individually and as a surviving heir of Cheri Marie Jolin; BRITTANY JOLIN, individually and as a surviving heir of Cheri Marie Jolin; ALEXANDER NEMERS, individually and as a surviving heir of Cheri Marie Jolin; and the ESTATE OF CHERI MARIE JOLIN, by and through the heirs of decedent Cheri Marie Jolin,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, a foreign corporation; MERCEDES-BENZ USA, LLC, a Delaware corporation; PENSKE AUTOMOTIVE GROUP, INC., a Delaware corporation; MAGNA INTERNATIONAL INC., a foreign corporation; MAGNA SEATING, INC., a foreign corporation; INTIER AUTOMOTIVE OF AMERICA, INC., a Delaware corporation; MAGNA SEATING OF AMERICA, INC., a Delaware corporation; and JOHN DOE NOS. 1-40,<br><br>Defendants. | |
| *Attorneys for Plaintiff*<br><br>Anne M. Dieruf, #36147<br>THE GILBERT LAW GROUP, P.C.<br>5400 Ward Road, Bldg. IV, Suite 200<br>Arvada, CO 80002<br>Telephone: (303) 431-1111<br>Fax Number: (303) 431-1633<br>E-mail: adieruf@thegilbertlawgroup.com | Case Number:<br><br>Courtroom: |
| **COMPLAINT WITH JURY DEMAND** | |

1

COMES NOW the Plaintiffs, and for their Civil Complaint against Defendants allege and aver as follows:

### GENERAL ALLEGATIONS

1.      This is a wrongful death and survival action to recover for injuries to and the death of Cheri Marie Jolin, who was killed on September 28, 2015 as a result of defects in the Defendants' automotive products (hereinafter "the subject accident"), and for the resulting damages to Plaintiffs, the heirs of Cheri Marie Jolin, and the Estate of Cheri Marie Jolin.

2.      Plaintiffs Natalie Carrado, Brittany Jolin, and Alexander Nemers are and at all relevant times were citizens of Colorado.

3.      Plaintiffs Natalie Carrado, Brittany Jolin, and Alexander Nemers are the natural adult children of decedent Cheri Marie Jolin, who was unmarried at the time of her death.

4.      At all times necessary to this action Defendant DAIMLER AG was and is a German corporation headquartered in and with its principal place of business believed to be in Stuttgart, Germany.   DAIMLER AG has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant DAIMLER AG transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

5.      At all times necessary to this action Defendant MERCEDES-BENZ USA, LLC was and is a Delaware corporation headquartered in and with its principal place of business believed to be in Georgia. MERCEDES-BENZ USA, LLC has regularly done, and is doing,

2

business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant MERCEDES-BENZ USA, LLC transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

6.   At all times necessary to this action Defendant PENSKE AUTOMOTIVE GROUP, INC. was and is a Delaware corporation headquartered in and with its principal place of business in Bloomfield Hills, Michigan.   PENSKE AUTOMOTIVE GROUP, INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant PENSKE AUTOMOTIVE GROUP, INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

7.   Defendants JOHN DOES 1-40 are believed to be individuals, partnerships, corporations, and/or business entities, doing business in the State of Colorado. The true names and/or capacities, whether individual, corporate, governmental, or otherwise of defendants DOES 1 through 40, inclusive, are unknown to Plaintiffs, who thus sue said Defendants by such fictitious names. When the true names and/or capacities of said Defendants are ascertained, Plaintiffs will seek leave to amend the complaint accordingly.   Plaintiffs are informed and believe that each Defendant designated herein as a Doe was responsible, negligently, or in some other actionable manner, for the defective product(s) at issue and/or the events described herein that were a cause of injuries and damages to Plaintiffs.

8.      DAIMLER AG, MERCEDES-BENZ USA, LLC, PENSKE AUTOMOTIVE

GROUP, INC., and JOHN DOES 1-20 are hereinafter collectively referred to as "Mercedes."

9.      Upon information and belief, MERCEDES-BENZ USA, LLC is a wholly and/or

mostly owned subsidiary of DAIMLER AG, thereby further qualifying as a "manufacturer"

pursuant to C.R.S. 13-21-401(1), which includes "any seller of a product who is owned in whole

or significant part by the manufacturer."

10. Mercedes is a multi-national corporation that operates worldwide through its various

subsidiaries, including American subsidiaries. The Mercedes entities, including the foreign and

American Mercedes entities, placed the subject defective vehicle and its components into the

stream of commerce with knowledge and intent that such product would reach every state in the

United States, including Colorado.  Upon information and belief, many thousands of identical

and/or similar Mercedes products are sold and/or used throughout the State of Colorado, and

Mercedes makes resulting profits.

11.     Upon information and belief Mercedes should reasonably anticipate being haled

into court in Colorado for various reasons, including but not limited to the following: Mercedes

has purposefully availed itself of the benefits of doing business in Colorado; Mercedes has a

regular plan for distribution of automobiles within the United States, including in Colorado, with

the goal of achieving a commercial benefit from the sale of those products in Colorado; Mercedes

places automobiles into the stream of commerce by targeting Colorado through a network of

automobile dealers in the State of Colorado; Mercedes directs Colorado residents to approved

Colorado locales to purchase new Mercedes vehicles and to have recall work performed on their

products; Plaintiffs' decedent used the subject vehicle in the State of Colorado and was injured

4

and killed by the product in the State of Colorado; Plaintiffs' claims are connected with or related to Mercedes' contacts with Colorado; and there is little or no burden on Mercedes in litigating this case in a Colorado court.

12.     Upon information and belief, at all times necessary to this action the Mercedes Defendants, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Mercedes co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

13.     At all times necessary to this action Defendant MAGNA INTERNATIONAL, INC. was and is a Canadian corporation headquartered in and with its principal place of business believed to be in Ontario, Canada. MAGNA INTERNATIONAL, INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant MAGNA INTERNATIONAL, INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

14.     At all times necessary to this action Defendant MAGNA SEATING, INC. was and is a Canadian corporation headquartered in and with its principal place of business believed to be in Canada. MAGNA SEATING, INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State

of Colorado. Defendant MAGNA SEATING, INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

15.     At all times necessary to this action INTIER AUTOMOTIVE OF AMERICA, INC., was and is a Delaware corporation headquartered in and with its principal place of business believed to be in Michigan.  INTIER AUTOMOTIVE OF AMERICA, INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant INTIER AUTOMOTIVE OF AMERICA, INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

16.     At all times necessary to this action MAGNA SEATING OF AMERICA, INC. was and is a Delaware corporation headquartered in and with its principal place of business believed to be in Michigan.  MAGNA SEATING OF AMERICA, INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant MAGNA SEATING OF AMERICA, INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

17.     MAGNA INTERNATIONAL, INC., MAGNA SEATING, INC., INTIER AUTOMOTIVE OF AMERICA, INC., MAGNA SEATING OF AMERICA, INC., and JOHN DOES 21-40 are hereinafter collectively referred to as "Magna."

6

18. Upon information and belief, INTIER AUTOMOTIVE OF AMERICA, INC., MAGNA SEATING, INC., and MAGNA SEATING OF AMERICA, INC. are wholly and/or mostly owned subsidiaries of MAGNA INTERNATIONAL, INC., thereby further qualifying as "manufacturers" pursuant to C.R.S. 13-21-401(1), which includes "any seller of a product who is owned in whole or significant part by the manufacturer."

19. Magna is a multi-national corporation that operates worldwide through its various subsidiaries, including American subsidiaries. The Magna entities, including the foreign and American Magna entities, placed the subject defective seat into the stream of commerce with knowledge and intent that such product would reach every state in the United States, including Colorado. Upon information and belief, many thousands of identical and/or similar Manga products, are sold and/or used throughout the State of Colorado, and Magna makes resulting profits.

20. Upon information and belief Magna should reasonably anticipate being haled into court in Colorado for various reasons, including but not limited to the following: Magna has purposefully availed itself of the benefits of doing business in Colorado; Magna has a regular plan for distribution of automobile seats and other components within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado; Magna places automobile component parts into the stream of commerce by targeting Colorado through a network of automobile dealers in the State of Colorado; Plaintiffs' decedent used the subject seat and/or seating system in the State of Colorado and was injured and killed by the product in the State of Colorado; Plaintiffs' claims are connected with or related to Magna's

contacts with Colorado; and there is little or no burden on Magna in litigating this case in a Colorado court.

21. Upon information and belief, at all times necessary to this action the Magna Defendants, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Magna co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

22. On September 28, 2015, decedent Cheri Marie Jolin, who was properly seatbelted with a lap belt and shoulder harness, was driving a Smart ForTwo believed to be a model year 2008 and believed to bear vehicle identification number WMEEJ31X78K207941 (referred to herein as "the Smart") northbound on Interstate 25 near Greenwood Village, Colorado.

23. At a point near Milepost 199.1, the moderate to heavy traffic began to slow and the Smart was rear ended by a Ford F-150 pickup truck.

24. During the subject accident, the Smart's driver's seat and/or seating system, the driver's safety restraint system, and the Smart's structure failed, resulting in the death of Cheri Marie Jolin.

25. Mercedes designed, tested, engineered, assembled, fabricated, formulated, produced, constructed, approved, manufactured, packaged, labeled, marketed, licensed, imported, supplied, distributed, prepared for sale, and sold the Smart and all of its components, including all the components alleged to be defective herein.

8

26.     Magna designed, tested, engineered, assembled, fabricated, formulated, produced, constructed, approved, manufactured, packaged, labeled, marketed, licensed, imported, supplied, distributed, prepared for sale, and sold the Subject Smart's driver's seat and/or seating system (hereinafter the "Subject Seat") and all of its components, including all the components alleged to be defective herein.

27.     The conduct of Mercedes, Magna, and/or John Does 1-40 was such that it constituted a gross deviation from the standard of reasonable care.

### FIRST CLAIM FOR RELIEF
### *(Strict Liability – Mercedes)*

28.     Plaintiffs incorporate all allegations made elsewhere in this Complaint.

29.     At all times material to this action, Mercedes was in the business of designing, testing, engineering, assembling, fabricating, formulating, producing, constructing, approving, manufacturing, importing, packaging, labeling, marketing, licensing, distributing, supplying, preparing for sale, and selling motor vehicles, including the Smart, for use in Colorado and elsewhere throughout the United States.

30.     At the time the Smart left the control of Mercedes, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it in accord with either its intended or foreseeable uses. These defects include but are not limited to the following:

a.  The Smart lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Smart (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

b.  The Smart was uncrashworthy in its design and manufacture. Specifically, the Smart lacked adequate rear crashworthiness protections that would protect occupants in foreseeable rear impacts.

9

c. The Smart's driver's seat and/or seating system was susceptible to failure and excessive rearward movement during rear impact accidents.

d. The Smart and its components were inadequate to provide reasonable protection to occupants during accidents. Specifically, the Smart driver's seat and/or seating system was designed such that the seatback would move and deform rearward during foreseeable rear impacts, posing serious danger to the seated occupant.

e. The Smart's driver's seat and/or seating system was inadequately designed, manufactured, imported, supplied, and sold. Whereas a safe seat and/or seating system remains upright and resists excessive rearward movement when exposed to foreseeable rear impact crash forces, the Smart's seat and/or seating system, in effect, was designed so that its seatback would move and deform rearward during foreseeable rear impact accidents.

f. The Smart's design failed to incorporate other seat and/or seating system designs and technologies that could protect occupants from foreseeable crash forces in rear impact accidents. Mercedes was aware of some such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

g. The Smart's driver's safety restraint system was susceptible to failure during rear impact accidents.

h. The Smart was inadequate to provide reasonable protection to occupants during accidents. Specifically, the Smart's driver's safety restraint system was designed such that the seatbelt failed to adequately lock and/or failed to adequately couple occupants to the seat during foreseeable rear impacts, posing serious danger to the seated occupant.

i. The Smart's driver's safety restraint system and its components were inadequately designed, manufactured, imported, supplied, and sold. Whereas a safe safety restraint system remains tight and securely couples the occupant to the seat when exposed to foreseeable rear impact crash forces, the safety restraint system in the Smart failed to properly restrain occupants during foreseeable rear impact accidents.

j. The Smart's design failed to incorporate other seatbelt and occupant restraint designs and technologies that could protect occupants from foreseeable crash forces in rear-end accidents, including but not limited to pretensioners designed to trigger in a rear impact or rear window airbags. Mercedes was aware of such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

k. The Smart lacked an adequate rear crush zone that would have absorbed crash energy and protected occupants in a foreseeable rear impact.

10

l.  The Smart is inherently unsafe because it is a mismatch with every other car on American roads and does not contain features to counter the effects of this mismatch, including but not limited to a strong seat, adequate safety restraint system, adequate rear crush zone, and rear window airbags.

m.  The Smart's design failed to integrate its various components, including the seat, seatbelt system and rear structure, in such a way that would reasonably protect occupants in foreseeable rear impacts.

n.  The Smart's overall design and "packaging" was inadequate to protect occupants during foreseeable rear impacts.

o.  The Smart lacked adequate and sufficient post-sale warnings and instructions about the risks, dangers, and harms presented by the Smart, and reasonable means to reduce such risks, dangers and harms.

31.  The Smart and its components at issue in this lawsuit were expected by Mercedes to reach, and did reach, the user or consumer without substantial change to the condition in which they were sold.

32.  Cheri Marie Jolin was a person who reasonably would be expected to use the Smart and its components.

33.  It was foreseeable to Mercedes that the Smart could and would be involved in a rear collision in Colorado.

34.  The defects in the Smart and its component parts were a proximate cause of the injuries to Cheri Marie Jolin and of the resulting damages to Plaintiffs.

35.  Mercedes is strictly liable to the Plaintiffs for injuries caused by defects and inadequacies in the design and manufacture of the Smart.

### SECOND CLAIM FOR RELIEF
### *(Negligence – Mercedes)*

36.  Plaintiffs incorporate all allegations made elsewhere in this complaint.

37. Mercedes had a duty to exercise reasonable care in designing, manufacturing, supplying, importing, distributing, and/or selling the Smart and its components.

38. Mercedes also had a duty to design, manufacture, supply, import, distribute, and sell the Smart to provide reasonable protection to occupants in the event of a foreseeable rear collision.

39. Mercedes also had a duty to design, manufacture, supply, import, distribute, and sell a vehicle with a driver's seat and/or seating system that would provide reasonable protection to occupants in the event of a foreseeable rear collision. In particular, Mercedes had a duty to design, manufacture, supply, import, distribute, sell, and provide a driver's seat and/or seating system that would reasonably restrain occupants in a rear collision.

40. Mercedes also had a duty to design, manufacture, supply, import, distribute, and sell a vehicle with a seatbelt system that would provide reasonable protection to occupants in the event of a foreseeable rear collision. In particular, Mercedes had a duty to design, manufacture, supply, import, distribute, sell, and provide a driver's seatbelt system that would reasonably restrain occupants in a rear collision.

41. Mercedes had a duty to properly warn consumers of the risks, dangers, and harms presented by the Smart (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

42. Mercedes negligently designed, tested, engineered, assembled, fabricated, formulated, produced, constructed, approved, manufactured, imported, packaged, labeled, marketed, licensed, distributed, supplied, prepared for sale, and sold the Smart and its components in that it failed to exercise reasonable care to prevent the Smart and its components from creating

12

an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. Mercedes thereby breached its various duties set forth in this Claim for Relief.

    43.    Mercedes's acts of negligence include but are not limited to the following:

a. Mercedes failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Smart (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

b. Mercedes failed to provide a crashworthy vehicle. Specifically, Mercedes failed to provide a vehicle with adequate rear crashworthiness protections that would protect occupants in foreseeable rear impacts.

c. Mercedes failed to provide a crashworthy or adequate driver's seat and/or seating system that does not fail or experience excessive rearward movement during rear impact accidents.

d. Mercedes failed to provide reasonable protection to occupants during accidents. Specifically, Mercedes designed and manufactured the driver's seat and/or seating system such that the seatback moved and deformed rearward during foreseeable rear impact accident, posing serious danger to the seated occupant.

e. Mercedes negligently designed, manufactured, imported, distributed, and sold the driver's seat and/or seating system and its components. Whereas a safely seating system remains upright and resists excessive rearward movement when exposed to foreseeable rear impact crash forces, the Smart's seat and/or seating system, in effect, was designed so that its seatback would move and deform rearward during foreseeable rear impact accidents.

f. Mercedes failed to incorporate other seat and/or seating system designs and technologies that could protect occupants from foreseeable crash forces in rear impact accidents. Mercedes was aware of some such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

g. Mercedes failed to provide an adequately safe driver's safety restraint system that was not susceptible to failure during rear impact accidents.

h. Mercedes failed to provide reasonable protection to occupants during accidents. Specifically, Mercedes designed the driver's safety restraint system such that the

seatbelt failed to adequately lock and/or failed to adequately couple occupants to the seat during foreseeable rear impacts, posing serious danger to the seated occupant.

i. Mercedes negligently designed, manufactured, imported, distributed, and sold the driver's safety restraint system and its components. Whereas a safe safety restraint system remains tight and securely couples the occupant to the seat when exposed to foreseeable rear impact crash forces, the safety restraint system in the Smart failed to properly restrain occupants during foreseeable rear impact accidents.

j. Mercedes failed to incorporate other seatbelt and occupant restraint designs and technologies that could protect occupants from foreseeable crash forces in rear-end accidents, including but not limited to pretensioners designed to trigger in a rear impact or rear window airbags. Mercedes was aware of such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

k. Mercedes failed to equip the Smart with an adequate rear crush zone that would have absorbed crash energy and protected occupants in a foreseeable rear impact.

l. Mercedes designed, manufactured and sold an inherently unsafe vehicle that was a mismatch with every other car on American roads, and which does not contain features to counter the effects of this mismatch including but not limited to a strong seat, adequate safety restraint system, adequate rear crush zone, and rear window airbags.

m. Mercedes failed to integrate the Smart's various components, such as seating system and seatbelt system, in such a way that would reasonably protect occupants in foreseeable rear impacts.

n. Mercedes failed to provide a vehicle with adequate overall design and "packaging" that would protect occupants during foreseeable rear impacts.

o. Mercedes engaged in inadequate testing of the Smart and similar vehicles, and of the Smart's various components, including but not limited to the vehicle's driver's seat, driver's seatbelt, and rear structure.

44.     The factual basis for Mercedes's negligence is also further specified in the First

Claim for Relief, incorporated herein.

45.     At the time of the design and manufacture of the Smart, Mercedes was aware of

the dangers of rear collisions and of seats that collapse in rear collisions, and of the need to

provide reasonable crashworthiness protections to occupants involved in rear collisions in Smarts and other Mercedes vehicles.

46.    At the time of the design and manufacture of the Smart, Mercedes knew, or in the exercise of reasonable care should have known, of the dangers of the seatbelt system failing to provide good restraint,

47. Mercedes was aware or should have been aware of the problem of inadequate rear crashworthiness in the Smart, but it failed to take reasonable measures to correct this danger.

48. Mercedes was aware or should have been aware of the problem of mismatched vehicle accidents, but it failed to take reasonable measures to correct this danger.

49.    Mercedes nonetheless failed to exercise ordinary care to design and provide the Smart with an adequate driver's seat and/or seating system, driver's seatbelt system, proper rear crush zone, rear window airbags, or other safety features that would have better protected Smart occupants, including Cheri Marie Jolin, in foreseeable rear impacts.

50.    At the time of the design and manufacture of the Smart, Mercedes knew, or in the exercise of reasonable care should have known, of alternative seat and seating system designs, seatbelt and occupant restraint designs, and structural designs, each of which were technologically and economically feasible and that would better protect occupants during rear impacts, but Mercedes chose not to incorporate these alternative designs.

51.    At the time of the design and manufacture of the Smart, Mercedes knew, or in the exercise of reasonable care, should have known of the dangers of the failure to design its various components, such as the seating system, seatbelt, and rear structures, in such a way that would reasonably protect occupants in rear impacts.

52.    Mercedes's knowledge as described in this Complaint is believed to be reflected in internal communications, including memoranda and email, in reports of other incidents involving Mercedes vehicles, in compilations and analysis of accident data, and in the results of tests, studies, and analysis conducted by Mercedes and others, which may have included dynamic or static tests, computer simulations, and cost/benefit analyses.

53.    Mercedes breached its duties set forth herein, including but not limited to its duty to design, manufacture, sell, import, distribute, and provide a vehicle with reasonable crashworthiness protections in foreseeable rear accidents.

54.    Mercedes acted unreasonably in designing, manufacturing, marketing, importing, distributing, selling a vehicle that presented a substantial and unreasonable risk of injury or death to vehicle occupants involved in rear collisions, including Cheri Marie Jolin.

55.    Mercedes's negligence was a proximate cause of the injuries to Cheri Marie Jolin and of the resulting damages to Plaintiffs.

56.    Mercedes is liable to the Plaintiffs for injuries and damages caused by its negligent acts and/or omissions.

### THIRD CLAIM FOR RELIEF
### (Breach of Warranty – Mercedes)

57.    Plaintiffs incorporate all allegations made elsewhere in this complaint.

58.    Upon information and belief, express warranties, warranties of future performance, an implied warranty of merchantability, and/or an implied warranty of fitness existed with respect to the subject Smart.

59.    Mercedes knew or had reason to know the particular purposes for which the Smart and its components were required and were to be used, and that purchasers and users such as

16

Cheri Marie Jolin would rely on Mercedes's skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

60.     The Smart and its components were not fit for the particular purposes for which they were intended, and for which they were used, nor was it fit for the ordinary purpose for which it was intended and for which it was to be used, and it was not of merchantable quality at the time it was offered for sale.

61.     At the time the Smart was designed, manufactured, imported, distributed, and sold, Mercedes knew or reasonably should have known that it was defective and not reasonably safe for the uses intended.

62.     At the time the Smart was designed, manufactured, imported, distributed, and sold, Mercedes knew or reasonably should have known that it posed unreasonable risks of injury to the motoring public for the reasons set forth in the previous Claims for Relief.

63.     The Smart and its components did not conform to the warranties, warranties of future performance, affirmations, and representations made by Mercedes.

64.     The Plaintiffs relied to their detriment on the express and/or implied warranties, including but not limited to warranties of future performance, of Mercedes.

65.     The Plaintiffs were third-party beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance, made by Mercedes to others.

66.     Mercedes's breach of its express and implied warranties, including but not limited to warranties of future performance, was a proximate cause of the injuries to Cheri Marie Jolin and the resulting damages to Plaintiffs.

67.     Plaintiffs hereby specifically plead and provide notice to Mercedes with respect to the said breach of warranties in accord with C.R.S. 4-2-607(3).

68.     Mercedes is liable to the Plaintiffs for injuries and damages caused by its breach of warranties.

### FOURTH CLAIM FOR RELIEF
#### (Strict Liability – Magna)

69.     Plaintiffs incorporate all allegations made elsewhere in this Complaint.

70.     At all times material to this action, Magna was in the business of designing, testing, engineering, assembling, fabricating, formulating, producing, constructing, approving, manufacturing, importing, packaging, labeling, marketing, licensing, distributing, supplying, preparing for sale, and selling seats and seating systems for motor vehicles, including the Smart, for use in Colorado and elsewhere throughout the United States.

71.     At the time the Subject Seat left the control of Magna, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it in accord with either its intended or foreseeable uses. These defects include but are not limited to the following:

    a.  The Subject Seat lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Seat (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

    b.  The Subject Seat was uncrashworthy in its design and manufacture. Specifically, the Subject Seat lacked adequate rear crashworthiness protections that would protect occupants in foreseeable rear impacts.

    c.  The Subject Seat was susceptible to failure and excessive rearward movement during rear impact accidents.

    d.  The Subject Seat was inadequate to provide reasonable protection to occupants during accidents. Specifically, the Subject Seat was designed such that the seatback would

18

move and deform rearward during foreseeable rear impacts, posing serious danger to the seated occupant.

e. The Subject Seat was inadequately designed, manufactured, imported, supplied, and sold. Whereas a safe seat and/or seating system remains upright and resists excessive rearward movement when exposed to foreseeable rear impact crash forces, the Subject Seat, in effect, was designed so that its seatback would move and deform rearward during foreseeable rear impact accidents.

f. The Subject Seat's design failed to incorporate other seat and/or seating system designs and technologies that could protect occupants from foreseeable crash forces in rear impact accidents. Magna was aware of some such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

g. The Subject Seat design failed to integrate with other various vehicle components, including but not limited to the seatbelt system and rear structures, in such a way that would reasonably protect occupants in foreseeable rear impacts.

h. The Subject Seat's overall design and "packaging" was inadequate to protect occupants during foreseeable rear impacts.

i. The Subject Seat lacked adequate and sufficient post-sale warnings and instructions about the risks, dangers, and harms presented by the Subject Seat, and reasonable means to reduce such risks, dangers and harms.

72. The Subject Seat and its components at issue in this lawsuit were expected by Magna to reach, and did reach, the user or consumer without substantial change to the condition in which they were sold.

73. Cheri Marie Jolin was a person who reasonably would be expected to use the Subject Seat and its components.

74. It was foreseeable to Magna that the Subject Seat could and would be involved in a rear collision in Colorado.

75. The defects in the Subject Seat and its component parts were a proximate cause of the injuries to Cheri Marie Jolin and of the resulting damages to Plaintiffs.

19

76.     Magna is strictly liable to the Plaintiffs for injuries caused by defects and inadequacies in the design and manufacture of the Subject Seat.

### FIFTH CLAIM FOR RELIEF
### (Negligence – Magna)

77.     Plaintiffs incorporate all allegations made elsewhere in this complaint.

78.     Magna had a duty to exercise reasonable care in designing, manufacturing, supplying, importing, distributing, and/or selling the Subject Seat and its components.

79.     Magna also had a duty to design, manufacture, supply, import, distribute, and sell the Subject Seat to provide reasonable protection to occupants in the event of a foreseeable rear collision.

80.     Magna also had a design, manufacture, supply, import, distribute, and sell a vehicle with a driver's seat and/or seating system that would provide reasonable protection to occupants in the event of a foreseeable rear collision. In particular, Magna had a duty to design, manufacture, supply, import, distribute, and sell a driver's seat and/or seating system that would reasonably restrain occupants in a rear collision.

81.     Magna had a duty to properly warn consumers of the risks, dangers, and harms presented by the Subject Seat (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

82.     Magna negligently designed, tested, engineered, assembled, fabricated, formulated, produced, constructed, approved, manufactured, imported, packaged, labeled, marketed, licensed, supplied, distributed, prepared for sale, and sold the Subject Seat and its components in that it failed to exercise reasonable care to prevent the Subject Seat and its components from creating an unreasonable risk of harm to a person who might reasonably be

expected to use it in an expected or reasonably foreseeable manner. Magna thereby breached its various duties set forth in this Claim for Relief.

83.   Magna's acts of negligence include but are not limited to the following:

a.   Magna failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Seat (as set forth elsewhere in this Complaint and incorporated herein) and reasonable means to reduce such risks, dangers and harms.

b.   Magna failed to provide a crashworthy product. Specifically, Magana failed to provide a seat and/or seating system with adequate rear crashworthiness protections that would protect occupants in foreseeable rear impacts.

c.   Magna failed to provide a crashworthy or adequate driver's seat and/or seating system that does not fail or experience excessive rearward movement during rear impact accidents.

d.   Magna failed to provide reasonable protection to occupants during accidents. Specifically, Magna designed and manufactured the Subject Seat such that the seatback moved and deformed rearward during foreseeable rear impact accident, posing serious danger to the seated occupant.

e.   Magna negligently designed and manufactured the Subject Seat and its components. Whereas a safe seating system remains upright and resists excessive rearward movement when exposed to foreseeable rear impact crash forces, the Subject Seat, in effect, was designed so that its seatback would move and deform rearward during foreseeable rear impact accidents.

f.   Manga failed to incorporate other seat and/or seating system designs and technologies that could protect occupants from foreseeable crash forces in rear impact accidents. Magna was aware of some such designs and technologies, including superior designs and technologies used by other manufacturers and in other vehicles.

g.   Magana failed to consider the integration of and/or integrate the Subject Seat with other various vehicle components, such as the seatbelt system and rear structure, in such a way that would reasonably protect occupants in foreseeable rear impacts.

h.   Magna failed to provide a Subject Seat with adequate overall design and "packaging" that would protect occupants during foreseeable rear impacts.

i.   Magna engaged in inadequate testing of the Subject Seat and similar seats and seating systems, and of the Subject Seat's various components.

84.     The factual basis for Magna's negligence is also further specified in the Fourth Claim for Relief, incorporated herein.

85.     At the time of the design and manufacture of the Subject Seat, Magna was aware of the dangers of rear collisions and of seats that collapse in rear collisions, and of the need to provide reasonable crashworthiness protections to occupants involved in rear collisions in Smarts and other vehicles.

86.     Magna nonetheless failed to exercise ordinary care to design and provide an adequate Subject Seat or other safety features that would have better protected Smart occupants, including Cheri Marie Jolin, in foreseeable rear impacts.

87.     At the time of the design and manufacture of the Subject Seat, Magna knew, or in the exercise of reasonable care should have known, of alternative seat and seating system designs, each of which were technologically and economically feasible and that would better protect occupants during rear impacts, but Magna chose not to suggest such designs to Mercedes and/or incorporate these alternative designs in the Smart.

88.     At the time of the design and manufacture of the Subject Seat, Magna knew, or in the exercise of reasonable care, should have known of the dangers of the failure to design its Subject Seat to properly integrate with other various vehicle components, such as the seating seatbelt and rear structures, in such a way that would reasonably protect occupants in rear impacts.

89.     Magna's knowledge as described in this Complaint is believed to be reflected in internal communications, including memoranda and email, in reports of other incidents involving Magna seats and/or seating systems, in compilations and analysis of accident data, and in the

results of tests, studies, and analysis conducted by Magna and others, which may have included dynamic or static tests, computer simulations, and cost/benefit analyses.

90.     Magna breached its duties set forth herein, including but not limited to its duty to design, manufacture, import, distribute, sell and provide the Subject Seat with reasonable crashworthiness protections in foreseeable rear accidents.

91.     Magna acted unreasonably in designing, manufacturing, marketing, importing, distributing, and selling a seat and/or seating system that presented a substantial and unreasonable risk of injury or death to vehicle occupants involved in rear collisions, including Cheri Marie Jolin.

92.     Magna's negligence was a proximate cause of the injuries to Cheri Marie Jolin and of the resulting damages to Plaintiffs.

93.     Magna is liable to the Plaintiffs for injuries and damages caused by its negligent acts and/or omissions.

### SIXTH CLAIM FOR RELIEF
### (Breach of Warranty – Magna)

94.     Plaintiffs incorporate all allegations made elsewhere in this complaint.

95.     Upon information and belief, express warranties, warranties of future performance, an implied warranty of merchantability, and/or an implied warranty of fitness existed with respect to the Subject Seat.

96.     Magna knew or had reason to know the particular purposes for which the Subject Seat and its components were required and were to be used, and that purchasers and users such as Cheri Marie Jolin would rely on Magna's skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

23

97.    The Subject Seat and its components were not fit for the particular purposes for which they were intended, and for which they were used, nor was it fit for the ordinary purpose for which it was intended and for which it was to be used, and it was not of merchantable quality at the time it was offered for sale.

98.    At the time the Subject Seat was designed, manufactured and sold, Magna knew or reasonably should have known that it was defective and not reasonably safe for the uses intended.

99.    At the time the Subject Seat was designed, manufactured and sold, Magna knew or reasonably should have known that it posed unreasonable risks of injury to the motoring public for the reasons set forth in the previous Claims for Relief.

100.   The Subject Seat and its components did not conform to the warranties, warranties of future performance, affirmations, and representations made by Magna.

101.   The Plaintiffs relied to their detriment on the express and/or implied warranties, including but not limited to warranties of future performance of the Subject Seat.

102.   The Plaintiffs were third-party beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance, made by Magna to others.

103.   Magna's breach of its express and implied warranties, including but not limited to warranties of future performance, was a proximate cause of the injuries to Cheri Marie Jolin and the resulting damages to Plaintiffs.

104.   Plaintiffs hereby specifically plead and provide notice to Magna with respect to the said breach of warranties in accord with C.R.S. 4-2-607(3).

105.   Magna is liable to the Plaintiffs for injuries and damages caused by its breach of warranties.

### SEVENTH CLAIM FOR RELIEF
#### *(Colorado Consumer Protection Act – All Defendants)*

106.   Plaintiffs incorporate all allegations made elsewhere in this Complaint.

107.   At all relevant times, Mercedes and Magna were doing business in the State of Colorado, and offering their products for sale to all Colorado residents. Such residents are generally unsophisticated in automobile defect matters and have no power to bargain over the safety features provided and/or not provided in the Defendants' products and/or the care taken by such Defendants to avoid automotive safety defects or safety hazards.

108.   In the course of their businesses, the Defendants' engaged in deceptive trade practices and/or caused another to engage in deceptive trade practices, in violation of C.R.S. 6-1-105, in the course of each of their businesses by knowingly making false representation(s) about the characteristics, benefits and qualities of their respective products, including but not limited to making representations that their respective products were safe and non-defective, despite knowing and/or having reason to know these representations were false when made.

109.   Upon information and belief, the Defendants knew these representations were false when made based upon information they knew or had reason to know, which was contained in internal communications, including memoranda and email, reports of other incidents involving the same or similar products, in compilations and analysis of accident data, and in the results of tests, studies, and analysis conducted by the respective Defendants and others, including but not limited to computer simulations and cost/benefit analyses.

110.    In the course of their businesses, Mercedes and Magna made false representations to the effect that the Smart and the Subject Seat were of a particular standard and quality, including but not limited to being safe and non-defective, at a time when they knew these representations were false.

111.    In the course of their businesses, Mercedes and Magna failed to disclose material information concerning the Smart and the Subject Seat, which was known at the time they advertised and sold them, and such failure to disclose was intended to induce consumers to buy the Smart and its components and/or utilize Mercedes' and Magana's goods.  Specifically, Mercedes and Magna failed to disclose the dangerous defects in the Smart and the Subject Seat as detailed in the previous Claims for Relief, and incorporated herein.

112.    In particular, in marketing, distributing and selling their respective products, the Defendants failed to disclose material information relating to the safety of the Smart and its components, as well as the Subject Seat, and thereby intended to induce consumers to purchase vehicles and products they otherwise would not have purchased had this information been disclosed. Such information included failure to warn of defects (as set forth in the previous Claims for Relief and incorporated herein) and failure to provide consumers with information regarding how the Smart and the Subject Seat would perform in foreseeable accidents, what safety alternatives existed but were not provided in the Smart and the Subject Seat, and the consequences of failing to provide such safer alternatives.

113.    It was Mercedes' and Magna's general practice to offer products and services to Colorado consumers and to advertise and represent such products and services as safe and/or non-defective.  In doing so, Mercedes and Magana intended to mislead and deceive the Plaintiffs'

26

decedent and knew that Plaintiffs' decedent and other Colorado residents would act in reliance on this information. Thus, in engaging in the said deceptive trade practices as to the Plaintiffs' decedent and others, Mercedes and Magna engaged in practices that significantly impacted the public as actual or potential consumers of the Defendants' products and services.

114.    Mercedes, Magna, and each of them, engaged in deceptive trade practices and/or caused another to engage in deceptive trade practices, in violation of C.R.S. 6-1-105, in the course of their businesses by advertising products with intent not to sell them as advertised, by making false or misleading statements of fact concerning the safety of products, and by employing "bait and switch" advertising consisting of advertising accompanied by an effort to sell products other than those advertised. Mercedes and Magna engaged in such practices by providing Plaintiffs' decedent with defective and unsafe products, and by advertising in such a way as would cause a reasonable person of ordinary intelligence to understand and reasonably expect that they would receive safe products if they purchased the Smart, the Subject Seat, and/or other similar products. However, because the Smart and the Subject Seat were defective (as set forth elsewhere in this Complaint and incorporated herein), the Plaintiffs' decedent received products that were different from those advertised. Accordingly, Mercedes, Magna, and each of them, violated C.R.S. 6-1-105(1)(e), (g), (i), and (n) and engaged in deceptive trade practices while engaged in the course of each of their businesses.

115.    Upon information and belief, other persons were also induced to purchase Mercedes' and Magna's products of the same or a similar type Plaintiffs' decedent purchased, and would have also received defective and unreasonably dangerous products that were different from the safe and non-defective products and services advertised.

116.    Upon information and belief, before and after Plaintiffs' decedent purchased the Smart and the Subject Seat, thousands of other consumers were exposed to the type of advertising that Plaintiffs' decedent was exposed to and Mercedes and Magna knew they would reasonably rely on such advertising, and to those consumers who were induced by such advertising to purchase products of the type Plaintiffs' decedent purchased, Mercedes and Magna made similar false statements knowing they would be relied upon by them. Thus, Plaintiffs' decedent and all such other people who purchased Mercedes' and Magna's similar products were harmed in that they were receiving defective and unreasonably dangerous products and services. Thus, in engaging in the said deceptive trade practices as to the Plaintiffs' decedent and others, Mercedes and Magna engaged in practices that significantly impacted the public as actual or potential consumers of Mercedes' and Magna's goods.

117.    The failure to disclose material information relating to the safety of the Smart and the Subject Seat tended to deceive and mislead consumers into believing such products were safe and fit for their intended uses, including but not limited to adequately protecting occupants in foreseeable rear accidents.

118.    Mercedes' and Magna's said deceptive trade practices directly and proximately caused Plaintiffs' decedent to suffer personal injuries resulting in her death.

119.    The activities described in this Claim for Relief and described in this complaint were undertaken in the course of Mercedes' and Magna's respective businesses.

120.    Such representations and activities, and the sale and/or service of Mercedes cars and Magna seats took place and are taking place in the State of Colorado.

121.    Plaintiffs' decedent, Cheri Marie Jolin, was an actual and potential user and consumer of Mercedes' and Magna's goods.

122.    As a result of Mercedes' and Magna's deceptive trade practices, Plaintiffs' decedent, as a potential and actual consumer of Mercedes' and Magna's goods, obtained products that were unsafe and unreasonably dangerous and was injured and killed by such products as set forth elsewhere in this Complaint and incorporated herein. Accordingly, Plaintiffs' decedent and the Plaintiffs sustained injury to legally protected interests.

123.    Mercedes' and Magna's deceptive trade practices were a proximate cause of the injuries to and death of Cheri Marie Jolin and the resulting damages to Plaintiffs.

124.    The actions described in this Claim for Relief constitute deceptive trade practices pursuant to Colorado Revised Statutes § 6-1-105. Pursuant to Colorado Revised Statutes § 6-1-113, Plaintiffs are entitled to treble damages, costs, and attorney fees.

125.    Upon information and belief, the above-described deceptive trade practices of Mercedes, Magna, and each of them, committed in violation of C.R.S. 6-1-105, were committed in "bad faith" as that term is defined in C.R.S. 6-1-113. Therefore, pursuant to C.R.S. 6-1-113, Plaintiffs are entitled to a recovery from Mercedes and Magna the greater of their actual damages, or $500, or three times the amount of actual damages sustained, plus costs and reasonable attorney's fees.

## CAUSATION & DAMAGES
### (All Defendants)

126.    Plaintiffs incorporate herein all allegations made elsewhere in this complaint.

127.   As a direct and proximate result of the acts and omissions of one or more of the Defendants set forth herein, Plaintiffs and their decedent incurred and seek the following general and special damages.

128.   As a direct and proximate result of the acts and omissions of the Defendants, and each of them, Plaintiffs, the Estate of Cheri Marie Jolin, and/or the statutory heirs or beneficiaries of Cheri Marie Jolin, have suffered and incurred damages, including without limitation the following:

a. Past and future grief, loss of companionship, pain and suffering, emotional stress, inconvenience, loss of affection, society, companionship, aid, comfort, services, benefits, consortium and counsel of Cheri Marie Jolin and impairment of the quality life, resulting from the wrongful death of Cheri Marie Jolin;

b. Loss of past earnings and loss of future earnings and earning capacity, lost household services, and other economic and pecuniary losses resulting from the wrongful death of Cheri Marie Jolin;

c. Burial and funeral expenses of Cheri Marie Jolin;

d. Past medical, hospital and rehabilitation care and services, nursing care and services, life care and attendant services, medication, therapy, and other expenses incurred by Cheri Marie Jolin after the subject accident and preceding her death, including special medical damages;

e. Attorney's fees, treble damages, costs, and other remedies available under the Colorado Consumer Protection Act;

f. Any other losses and damages sustained by the Estate of Cheri Marie Jolin, to which it is legally entitled either pursuant to statute or the common law, including costs and attorneys' fees;

g. Any other losses and damages sustained by each of the Plaintiffs, individually, to which they are entitled either pursuant to statute or the common law, including costs and attorneys' fees; and/or

h. Any other losses and damages sustained by the statutory heirs or beneficiaries of Cheri Marie Jolin, to which such persons are entitled either pursuant to statute or the common law, including costs and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for Judgment against the Defendants, and each of them, in an amount to be determined at trial and for the costs of this suit, pre-judgment and post-judgment interest, costs and expert witness fees, and for such other and further relief as the Court may deem proper.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 27th day of September 2017.

THE GILBERT LAW GROUP, P.C.

By: */s/ Anne M. Dieruf*

Anne M. Dieruf, #36147
5400 Ward Road, Bldg. IV, Suite 200
Arvada, CO 80002
Telephone:  303/431-1111
Facsimile:  303/431-1633

***ATTORNEYS FOR PLAINTIFFS***

*Plaintiffs' Addresses*:
1190 Madge Gulch Road
Sedalia, CO 80135

- and-

14561 E. Ford Pl., #1
Aurora, CO 80012